IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**LISA AUSTIN**                                                                  **PLAINTIFF**

**V.**                  **NO. 3:20-CV-00351-JTK**

**KILOLO KIJAKAZI,**
**COMMISSIONER OF**
**SOCIAL SECURITY ADMINISTRATION**[1]                         **DEFENDANT**

## ORDER

**I.  Introduction:**

Plaintiff, Lisa Austin ("Austin"), applied for disability benefits on March 27, 2018, alleging a disability onset date of February 28, 2018. (Tr. at 13). The claim was denied initially and upon reconsideration. *Id.* After conducting a hearing, the Administrative Law Judge ("ALJ") denied Austin's application on February 5, 2020. (Tr. at 26). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Austin has requested judicial review.

For the reasons stated below, the Court[2] affirms the decision of the Commissioner.

**II.  The Commissioner's Decision:**

The ALJ found that Austin had not engaged in substantial gainful activity since the alleged onset date of February 28, 2018.[3] (Tr. at 16). The ALJ found, at Step Two, that Austin had the

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

[3] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from

following severe impairments: migraines, anxiety disorder, mood disorder. *Id*.

After finding that Austin's impairments did not meet or equal a listed impairment (Tr. at 16), the ALJ determined that Austin had the residual functional capacity ("RFC") to perform work at the light exertional level with exceptions: (1) she should avoid extreme cold and wetness, work in direct sunlight, and loud noises; (2) she can perform simple, routine, repetitive tasks as well as make simple, work-related decisions; (3) she can concentrate, persist, and maintain pace with normal breaks; and (4) she can tolerate interpersonal contact with supervision that is simple, direct, and concrete. (Tr. at 18).

The ALJ found that Austin was unable to perform any of her past relevant work. (Tr. at 23). At Step Five, the ALJ relied upon Vocational Expert ("VE") testimony to find that, based on Girard's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. at 25). Therefore, the ALJ found that Austin was not disabled. *Id.*

### III. Discussion:

    A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); see also 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing

---

performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

   B. Austin's Arguments on Appeal

Austin contends that the evidence supporting the ALJ's decision is less than substantial. She argues that: (1) the ALJ did not properly evaluate medical opinions; (2) the RFC did not incorporate all of her limitations; and (3) the ALJ failed to consider Austin's work experience. For the following reasons, the Court finds that substantial evidence supports the ALJ's decision.

Austin's attorney admitted that Austin's main impairment was her migraine headaches. (Tr. at 35). She suffered some anxiety and depression but did not receive regular psychiatric treatment for that.

Austin's migraines improved with the implantation of a spinal cord stimulator in 2018, and she said that she was very pleased with the treatment. (Tr. at 41-49, 384-386). Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968,

F.2d 725, 728 (8th Cir. 1992). Austin said at the hearing that she was "still good" and that she had not been to the hospital more than once for headaches since the treatment began. (Tr. at 40-42). She also said chiropractic treatment helped, and she said she could do things like light chores, cooking, driving, watching TV, and driving. (Tr. at 45-47). Such daily activities undermine her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). Furthermore, one doctor recommended that she exercise and lose weight for symptom control. (Tr. at 397). *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (encouragement to exercise constituted evidence in support of ALJ's findings);

On October 29, 2018, Austin underwent a neurophysiological evaluation with Kristin Addison-Brown, Ph.D. (Tr. at 397-400). Austin presented with appropriate affect and linear thought-process with normal sensory and motor skills. *Id.* Dr. Brown recommended conservative treatment. But Dr. Brown said that Austin had working memory deficits and poor organization. *Id*. The ALJ found Dr. Brown's opinion to be non-persuasive and gave good reasons for doing so.[4] (Tr. at 21). She pointed to generally normal mental status exams and the fact that Austin did not seek out mental health treatment. *Id*. This analysis was proper.

Dr. Dennis Vowell, Psy.D examined Austin on January 13, 2019, and noted a relatively

---

[4] On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules, with an effective date of March 27, 2017, focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)-(c)(2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1-2) (2017). *See Phillips v. Saul*, 2020 U.S. Dist. LEXIS 110370, No 1:19-CV-00034-BD, at *4 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*.

normal mental status exam. (Tr. at 460-462). Austin had clear speech, logical thought process, and was alert and fully oriented. She said her medications for anxiety and ADD were effective. And she said she could perform some activities of daily living. *Id*. The ALJ found Dr. Vowell's report to be consistent with the benign medical findings about neurocognitive issues. (Tr. at 22).

Austin also asserts that the RFC did not fully incorporate her limitations.[5] She said that because a non-examining Disability Determination Services medical expert found that she had moderate problems in concentration, persistence and maintaining pace, the ALJ erred by only finding those problems to be mild. (Tr. at 82-83). However, where an opinion is only partially consistent with other evidence in the record, an ALJ may give significant weight to some aspects of the opinion while discounting portions of the opinion that are not supported. *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000). And the RFC accounted for limitations in those areas verbatim. The RFC also allowed for simple and routine tasks and simple work-related decisions. *See Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (moderate difficulties in concentration, persistence, or pace are consistent with being able to understand, remember, and carry out simple instructions while performing non-detailed tasks). And although Austin contends that the RFC should have included absenteeism component, Austin has not shown that she would miss work on a regular basis, and no doctor suggested anything similar. Treatment was conservative and effective, and the ALJ did account for Austin's problems with temperature, light, and loud noise in the RFC. Also, Austin did not seek medical care for headaches after June 2019, six months before the ALJ's

---

[5] A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

decision. The RFC accounted for Austin's' credible limitations.

Finally, Austin claims that the ALJ did not consider her work history. In fact, the ALJ questioned Austin extensively about her work history and then asked the VE about her work history and ability to perform her past work. (Tr. at 36-38, 50-51). That was sufficient.

### IV.   **Conclusion**:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly weighed the doctors' opinions, the RFC incorporated Austin's limitations, and the ALJ fairly considered Austin's work history. The finding that Austin was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 10th day of February, 2022.

_____
UNITED STATES MAGISTRATE JUDGE